Weldon, J.,
delivered the opinion of the court.
This cause was tried and determined at the last term of the ■court; and in that proceeding a judgment for $597.84 was ren *214 dered for the claimant. On appeal to the Supreme Court, that judgment was reversed, upon the ground that it was in form pro forma. The legal merits of the controversy not having been decided by the Supreme Court, we are asked to review and reverse our opinion in the former trial, and give a judgment on the merits, in favor of the claimant.
The facts are as follows :
On the 15th day of November, 1871, the claimant was appointed by the Postmaster-General a railway postal clerk at a salary of $1,400 per annum, and served in said capacity until May 23, 1883. From the 1st day of August, 187G, to the 31st day of July, 1SS2, his salary was reduced from $1,400 to $1,300, and on the' 12th day of June, 1879, a further reduction was made for one month, as stated, from $1,300 to $1,240 per an-num ; the total of such deductions being $597.84; and for that amount said judgment was rendered in favor of the plaintiff. Upon the foregoing state of facts, we are asked to render a judgment, upon the merits, for said amount. The cause is important in the fact that it affects a class of cases; and perhaps none of them is of sufficient magnitude to confer the right of appeal, in case the result is adverse to the claimant. It was for that reason that the judgment of the court at the last session differed from the opinion of the court.
The case has been most elaborately and ably argued by the claimant and the defense, especially so in the last trial.
The question of compensation of a public officer is most usually settled by the statute in regulating his fees for a given service, or measuring the quantity of his salary, if it is an office capable of having a fixed salary. Where the work is continuous, and does not consist of distinct acts of official power, an entire compensation is provided for an entire service.
A postal clerk is in the performance of a duty which can be measured only by a definite quantity of compensation. With a court it is not, as a general proposition, a question of how much a given public service is worth, but what is the statutory compensation provided for the performance of the labor. However meritorious the service may be, it must conform in its compensation to the amount fixed by law. It is not" the quantity merited, but the quantity allotted by the statute.
Section 4025 of the Bevised Statutes provides:
u The Postmaster-General may appoint clerks for the purpose of assorting and distributing the mail in railway post- *215 offices, each, of whom shall be paid, out of the appropriation for the transportation of mail, a salary at the rate of not more than one thousand four hundred dollars a year each to the head clerks, nor more than one thousand two hundred dollars a year each to the other clerks.”
It is insisted by claimant that the foregoing- section fixes the rate of compensation at the exact amount of $1,400; and that there is no power in the Postmaster-General to reduce it below that amount. The appointment of a sufficient number of clerks to distribute the mail in railway post-offices is by this statute given to the Postmaster-General, and he is to exercise his discretion both as to the persons to be appointed and the number of clerks to perform the service. The appointment is not for a definite period; and during the incumbency of the clerk the right to continue in the service is within the discretion and power of the Postmaster General. He may remove, in the exercise of that discretion, upon reasons satisfactory to himself.
Under the act of July 31,1882, entitled “An act to designate, classify, and fix the salaries of persons in the railway mail service (22 Stat. L., p. 180), it is provided—
“ That the Postmaster-General, in fixing the salaries of clerks in the different classes, may fix different salaries for clerks in the same class, according to the amount of work done and the responsibility incurred by each; but shall not in any case allow a higher salary to any clerk of any class than the maximum fixed by this act for the class to which such clerk belongs.”
The purpose of this statute is to enable the Postmaster-General to classify the postal clerks into different classes, dependent upon their importance in the mail service, and to fix their respective compensations, not to exceed a maximum allowance. The word “maximum” used in the statute, although not found in section 4025, may be held as indicating a purpose on the part of Congress to recognize in the Postmaster-General a power to determine the compensation for a given service. This statute, passed as it was after the rights of the claimant accrued, can not affect the rights to which he was entitled under section 4025, but may be referred to as explanatory of that section, and as indicating a policy Congress may have had in legislating on the question of postal mail service.
The point is made in behalf of the claimant that the salary being once fixed and established, the Postmaster-General had *216 no power to reduce or change it in his discretion. If the power exists iu the Postmaster-General to ñx the salary, it is a continuing power, and does not become exhausted by the exercise of it by the first designation. It is true that there are certain powers given to public officers or individuals which become exhausted when once exercised, but the power in this case, if it exists, does not belong to that character.
If the compensation, not to exceed a certain amount, is iu the control and discretion of the Postmaster-General, that control and discretion is not to be taken away by once exercising the power of designation. In the case of McBlair and Bunlcle (19 O. Gis. R., 397,528) this court held that the President in the exercise of a certain power in relation to officers on the retired list of the Army became /unctus officio; but those decisions are placed upon the distinction of a continuing power, and one intended to accomplish a definite and individual result.
The right to appoint and discharge at discretion gave to the officer practical control of the power of designation of the' amount of salary, and he would not be estopped by the fact that he once designated the salary at a given sum.
If the Postmaster-General had, under the law, the right to fix the salary ata sum not exceeding $1,400, and the power to appoint and discharge, the law would not require, him to-discharge and re-appoint, in order to designate the salary anew.
What can be done indirectly, may ordinarily be done directly, in the performance of a public dutj.
The statute confers on the officer the right to appoint clerks “at the rate of not more than $ 1,400 a year.” The services of clerks in the postal service are as dissimilar in the amount of labor performed and responsibility incurred as the different routes differ iu importance in the mail service to be performed.
If a discretion was given to the Postmaster-General to vary the compensation so as to suit the different degrees and responsibility of labor incident to different routes, or incident to a changed condition in the same routes, it would not have been an unwise policy of the law.
The words “not more than $1,400” become important because of the diversity of service which may be rendered by persons in the postal service. If the labor was uniform in its amount, no good reason would exist for a diversity of compensation ; but such is not the fact. The classification in the statute *217 of 1882 recognizes a condition of things which necessarily existed from the commencement of railway postal service, and will continue so long as differences exist in the commercial importance of the different mail routes of the United States.
As was quoted in the case'of Fisher (15 O. Cls. K>., ,327):
“ The good expositor (says Lord Coke) makes every sentence have its operation to suppress all the mischief; he gives effect to every word in the statute; he does construe it so that anything should be vain and superfluous, nor yet make exposition against express words.” (Dwarris on Statutes, 577.)
“In Bowen’s (14 U. S. R., 508) this court held that the introduction into a section of the Revised Statutes of the single word “ such,” which was not in the original act there revised and re-enacted, completely changed the law, and that decision was affirmed by the Supreme Court.” (Fisher v. United States, 327.)
In the case of The Eastern Railroad Company (20 C. Cls. R., 41), this court said:
“Section 4002 of the Revised Statutes, from the act of 1873, does not establish an absolute rate of compensation, necessarily alike to all railroads, for mail transportation, but fixes máximums which are not to be exceeded, leaving the Postmaster-General a discretion to make contracts at less rates if he should be able to do so. On that point the language of the section is clear: ‘The pay per mile shall not exceed the following rates.’
“ It is urged that this language is controlled by the preceding words of the section: ‘ The Postmaster-General is authorized and directed to re-adjust the compensation hereafter to be paid for the transportation of mails on railroad routes upon the conditions and at the rates hereinafter mentioned.’ In our opinion the rates there referred to are any rates which the Postmaster-General may contract for, not exceeding those thereinafter mentioned.”
In the case of The Union Pacific Railway Company v. The United States (20 C. Cls. R., 70) the words “ at a fair and reasonable rate of compensation, not to exceed the amounts paid by private parties for the same kind of service,” became a subject of judicial interpretation and application; but could it be successfully insisted in that case that such words absolutely fixed the compensation of the company at the prices paid by private parties, even though they were reasonable? “ Not to exceed ” and “not more than ” must be of similar legal import in reference to the subject-matter of this statute. Expressions in different phraseology, but conveying the same general mean *218 ing, must be held as equivalent in law. The sum of $1,400 being subjected to the restraining force of the words “not more than,” becomes in the act upon which the claimant’s right is based a maximum compensation, and not a definite and determined quantum of the valúe of the service performed by the claimant.
The fact that the claimant was appointed under the Act of 1805 (13 Stat. L., 506), which provides that the salary “ shall not exceed $1,400,” if different from the Revised Statutes, which provides that the salary shall be “ not more than $ 1,400,” would make no difference in favor of the claimant, as we have construed the power of designation, under the last act as to the salary, to be a continuing power. There could be no vested right against the defendants in the claim to a salary at $1,400 under the act of 1865.
In the Fisher Case this court decided :
“ With some few exceptions Congress may at any time reduce the salaries of public officers. The only contract which arises from a statute establishing a salary is to pay the incumbent that salary while the law remains inforceP (15 C. Ols. R., 333.)
The Fisher Case was taken to the Supreme Court, and, upon appeal, the principle announced in this court was affirmed, the Supreme Court saying:
“ Congress therefore could, without the violation of any contract, reducetke salary of the appellee, and had the constitutionalpoioer to do so.”
We have very carefully reconsidered our former opinion, aided by the suggestions of the able presentation of claimant’s right by his counsel in the second hearing; but are constrained by the best light of interpretation to hold, as we did in our former opinion, that the plaintiff has no right to recover and therefore
The petition must be dismissed.